UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAMELA BEAN | CIVIL ACTION |
| VERSUS | NO. 17-57 |
| AMERICAN GENERAL LIFE INSURANCE COMPANY | SECTION "R" (4) |

## ORDER AND REASONS

Before the Court is defendant's motion for summary judgment.[1] For the following reasons, the Court denies the motion.

## I. BACKGROUND

Plaintiff Pamela Bean alleges that she is owed benefits under a renewable, level term life insurance policy issued to her husband, Daniel Bean.[2] Mr. Bean's life insurance policy was issued by Old Line Life Insurance Company of America on January 27, 1999.[3] Plaintiff is the listed beneficiary on Mr. Bean's application for life insurance.[4] In 2003, Old Line Life

---

[1] R. Doc. 50.
[2] R. Doc. 24.
[3] R. Doc. 63-2 at 2, 6.
[4] *Id.* at 27.

Insurance merged into Defendant American General Life Insurance Company.[5]

Mr. Bean's life insurance policy includes a set premium for an initial fifteen-year term, and provides the insurer with a limited right to change the premium on the fifteenth policy anniversary and any later policy anniversary.[6] The policy lists an initial expiry date of January 27, 2014, and a final expiry date of January 27, 2053.[7] After the initial expiry date, the insured has the option to renew the policy annually through payment of the renewal premium.[8] Mr. Bean paid monthly premiums on his policy between January 1999 and December 2013.[9] According to plaintiff, these premiums were paid through automatic bank withdrawals.[10]

Between September 2013 and January 2014, defendant sent several notices informing Mr. Bean that his level premium period was ending and his monthly premium would increase on January 27, 2014.[11] Some of these letters also stated that, if Mr. Bean was currently paying through Electronic Funds Transfer, his payment method would automatically convert to

---

[5] R. Doc. 50-2 at 3 ¶ 5.
[6] R. Doc. 63-2 at 6.
[7] *Id.*
[8] *Id.* at 6, 9.
[9] R. Doc. 50-2 at 3 ¶ 7.
[10] R. Doc. 24 at 3 ¶ 13.
[11] R. Doc. 50-2 at 3-4, 30-36.

monthly paper statements to prevent overdraft of his bank account.[12] These notices and other bills were sent to Mr. Bean at 5201 Page Street, Marrero, Louisiana, 70072.[13] This is the address listed on Mr. Bean's application for insurance.[14] But plaintiff asserts that this address is outdated. In 2000, the Bean family sold the Page Street residence and moved to a new house on Barataria Boulevard.[15] Plaintiff testified that, after buying the new house, she set up mail forwarding with the postal service and sent a change-of-address notice to Old Line Life Insurance.[16]

Mr. Bean stopped paying life insurance premiums in January 2014.[17] Plaintiff asserts that the Beans never received notices from defendant regarding Mr. Bean's increased premium, and were unaware that the premiums would no long be paid through automatic bank withdrawals.[18] Mr. Bean died on October 8, 2014.[19] Defendant maintains that plaintiff is not entitled benefits under the life insurance policy because Mr. Bean's policy expired in January 2014.[20]

---

[12] *Id.* at 30-32, 36.
[13] *Id.* at 30-40.
[14] R. Doc. 63-2 at 27.
[15] *Id.* at 10-11; R. Doc. 63-9 at 5 ¶ 19.
[16] R. Doc. 63-3 at 11-15.
[17] R. Doc. 50-2 at 4-5 ¶ 15.
[18] R. Doc. 24 at 3 ¶¶ 11-13.
[19] *Id.* at 5 ¶ 25.
[20] R. Doc. 50-1 at 7-8.

On December 6, 2016, plaintiff filed a petition for damages in Louisiana state court.[21] Defendant removed the matter to this Court on the basis of diversity of citizenship,[22] and later moved to dismiss plaintiff's petition.[23] On June 30, 2017, the Court dismissed plaintiff's claims, but granted leave to amend.[24] Plaintiff timely filed an amended complaint,[25] and defendant again moved to dismiss.[26] The Court denied defendant's motion and found that plaintiff stated claims for breach of contract and statutory interest based on the notice requirements of Louisiana Revised Statutes § 22:905.[27] Defendant now moves for summary judgment.[28]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069,

---

[21] R. Doc. 1-2.
[22] R. Doc. 1.
[23] R. Doc. 6.
[24] R. Doc. 23.
[25] R. Doc. 24.
[26] R. Doc. 26.
[27] R. Doc. 40.
[28] R. Doc. 50.

4

1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citation omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the

reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

### A. Louisiana Notice Statute

Plaintiff's breach of contract claim is premised on a Louisiana statute that requires life insurers to comply with specific notice requirements before terminating a life insurance policy for nonpayment. The statute provides:

> No life insurer shall within one year after default in payment of any premium, installment, loan, or interest, declare forfeited or lapsed any policy issued or renewed, and not issued upon the payment of monthly or weekly premiums or for a term of one year or less, for nonpayment when due of any premium, installment, loan, or interest, or any portion thereof required by the terms of the policy to be paid, unless a written or printed notice shall have been duly addressed and mailed to the owner of the policy . . . at the last known post office address of such insured . . . at least fifteen and not more than forty-five days prior to the date when the same is payable.

La. R.S. 22:905(A). The legally required notice must state (1) the amount of the premium due and (2) "[t]he place where it shall be paid and the person to whom the same is payable." *Id.*

The purpose of this statutory notice requirement "is 'to protect insureds against loss of their policies through mere neglect to pay premiums and to give them a fair chance to meet the payments when due.'" *First Am. Bank & Trust of La. v. Tex. Life Ins. Co.*, 10 F.3d 332, 335 (5th Cir. 1994) (quoting *Lemoine v. Sec. Indus. Ins. Co.*, 569 So. 2d 1092, 1096 (La. App. 3 Cir. 1990)). As a forfeiture statute, the statute must be strictly construed. *See id.*; *Vining v. State Farm Life Ins. Co.*, 409 So. 2d 1306, 1309 (La. App. 2 Cir. 1982). If an insurer fails to provide legally sufficient notice under § 22:905, "the policy automatically extends for one year." *First Am. Bank & Trust of La.*, 10 F.3d at 335; *see also Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 563 (5th Cir. 2013). Plaintiff argues that defendant

7

did not provide adequate notice under the statute, and Mr. Bean's life insurance policy therefore remained in effect as a matter of law at the time of his death in October 2014.[29]

### B. Lapse of Policy

Defendant first contends that the notice statute is inapplicable because Mr. Bean's policy did not lapse for nonpayment, but instead expired at the end of its fifteen-year term.[30] The policy lists an initial expiry date of January 27, 2014.[31] But it is undisputed that Mr. Bean had the right to renew his life insurance policy in January 2014, and the sole action he was required to take to maintain continuous coverage under the policy was to timely pay the renewal premium. The policy states that it "may be renewed without evidence of insurability on each expiry date for a further term period . . . The first premium for a new term will be due at the end of the previous term. This policy will renew if this premium is paid within the grace period."[32] The notices sent by defendant to Mr. Bean's old address state that the level premium term on his policy is ending, and that his monthly premiums will increase on January 27, 2014.[33]

---

[29] R. Doc. 24 at 7 ¶ 32; R. Doc. 63.
[30] R. Doc. 50-1 at 7.
[31] R. Doc. 63-2 at 6.
[32] *Id.* at 9.
[33] R. Doc. 50-2 at 30-40.

Because Mr. Bean's life insurance policy would have remained in force without interruption had he paid the renewal premium due, the Court finds that the policy was declared lapsed for nonpayment. The statute restricts a life insurer's ability to declare a policy "forfeited or lapsed" for nonpayment. *See* La. R.S. 22:905(A). The term "lapsed" is broader than "forfeited," and includes a loss of insurance coverage because of nonrenewal.[34] *See Strickland v. Motors Ins. Co.*, 970 F.2d 132, 134-35, 137 (5th Cir. 1992) (explaining that the plaintiff's insurance policy lapsed after nonpayment of the renewal premium, and noting that "[f]orethought and caution might dictate that insured motorists keep a close watch on the expiration date of their policies to avoid inadvertent lapse"); *Nolan v. Mabray*, 51 So. 3d 665, 667, 672 (La. 2010) (reinstating the trial court's finding that an insurance policy lapsed after nonpayment of the renewal premium); *see also* Black's Law Dictionary (10th ed. 2014) (defining lapse as "[t]he termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred"). Accordingly, the insurance policy was declared lapsed for nonpayment, and defendant was

---

[34] Notably, defendant's own internal records and prior briefing stated that Mr. Bean's policy lapsed. *See* R. Doc. 26 at 2-3; R. Doc. 63-6 at 2.

required to comply with the statutory notice requirements of Louisiana Revised Statutes § 22:905 before terminating the policy.

### C. Timing of Statutory Notice

Defendant maintains that, even if the notice statute applies in this case, it provided legally sufficient notice to Mr. Bean before terminating his policy.[35] The parties first dispute whether the notices complied with the statute's timing requirements. The premium notice required by the statute must be addressed and mailed to the policy owner "at least fifteen and not more than forty-five days prior to the date when the same is payable." La. R.S. 22:905(A). The statute further provides that "[t]he affidavit of any officer, clerk, or representative of the insurer or of anyone authorized to mail such notice that the notice required by this Section has been duly addressed and mailed by the insurer issuing such policy, shall be presumptive evidence that such notice has been duly given." *Id.* 22:905(C).

Defendant's Director of Life Claims, Ronalda Adcock, attests that defendant mailed notices to Mr. Bean on December 30, 2013, January 3, 2014, and January 5, 2014.[36] Defendant has produced copies of these letters addressed to Mr. Bean at his old address.[37] The January 5, 2014 notice lists

---

[35] R. Doc. 50-1 at 8.
[36] R. Doc. 50-2 at 1, 4.
[37] *Id.* at 34-38.

10

a premium amount of $478.28, a due date of January 27, 2014, and information on how to pay the premium.[38] This notice was sent between fifteen and forty-five days before January 27, 2014.

Plaintiff contends that defendant's notice is nevertheless untimely because the date when the premium is payable is February 27, 2014, the last day of the grace period, not January 27, 2014.[39] Plaintiff relies on the Fifth Circuit's holding in *Conseco Life Ins.* that the date when a premium is payable on a flexible premium policy is the last day of the grace period. 732 F.3d at 563-64. But *Conseco* is inapposite because it involved a flexible premium policy. The Fifth Circuit explained that, unlike policies with specific monthly, quarterly, or semi-annual premium due dates, the policy at issue had "no premium due dates," and "[i]n the flexible premium context, the only payments *required* are those that are sufficient to maintain the policy." *Id.* at 565-67.

Here, it is undisputed that Mr. Bean's premiums were payable at regular intervals on specified dates. State and federal courts applying the notice requirements of § 22:905 to insurance policies with regular premium due dates consistently refer to the listed premium due date as the relevant

---

[38] *Id.* at 38.
[39] R. Doc. 63 at 17-20.

date for calculating the timeliness of notice. *See First Am. Bank & Trust of La.*, 10 F.3d at 334-36; *Compton v. Amicable Life Ins. Co. of Waco, Tex.*, 162 So. 751, 751-53 (La. 1935); *Boring v. La. State Ins. Co.*, 97 So. 856, 857 (La. 1923). Because defendant mailed a premium notice between fifteen and forty-five days before January 27, 2014, the notice was timely under the statute.

### D. Last Known Address

The statute further requires that notice be mailed to the policy owner "at the last known post office address of such insured." La. R.S. 22:905(A). Defendant bears the burden of proving that the written notice requirements of the statute were satisfied, and the policy was properly cancelled. *See Skipper v. Fed. Ins. Co.*, 116 So. 2d 520, 524 (La. 1959); *Lemoine*, 569 So. 2d at 1097; *Vining*, 409 So. 2d at 1310, 1312-13; *see also Express Rent-A-Car LLC v. U-Save Fin. Servs., Inc.*, No. 07-4356, 2009 WL 1649583, at *9 (E.D. La. 2009). Adcock attests that defendant mailed the above-described notices to Mr. Bean at his last known address, 5201 Page Street, Marrero, Louisiana 77072.[40] Although Adcock's affidavit may be presumptive evidence under § 22:905(C) that notice was given to the insured, this presumption is rebuttable. *See Cuccia v. Allstate Ins. Co.*, 263 So. 2d 884, 888 (La. 1972)

---

40     R. Doc. 50-2 at 2-5.

(interpreting a similar insurance notice statute); *Skipper*, 116 So. 2d at 523. Here, it is undisputed that the Beans did not live at the Page Street address when the notices were mailed. The relevant issue is thus not whether notice was mailed, but whether it was mailed to the insured's last known address.

Defendant argues that it provided legally sufficient notice because the Beans failed to change their address properly under the terms of the policy.[41] Specifically, defendant contends that the policy requires that any changes be made by the policy owner, not the beneficiary, and that correspondence be filed with the insurer's home office.[42] Defendant also states that plaintiff cannot confirm that the change of address notification was signed by her or Mr. Bean.[43] Plaintiff testified that she, not Mr. Bean, mailed the change of address notice to Old Line Life Insurance.[44] She further testified that she did not know the exact address she used for Old Line Life Insurance, but that it would have been the address in her phone book or the address provided by her husband.[45] The insurance policy states that "[a]ny request, notice or proof shall be filed with our home office."[46] But the Court cannot locate any

---

[41] R. Doc. 50-1 at 9-10.
[42] *Id.* at 9.
[43] *Id.*
[44] R. Doc. 63-3 at 12.
[45] *Id.* at 13-14.
[46] R. Doc. 50-2 at 19.

13

specific provision on the page of the policy cited by defendant that requires a change of address to be mailed or signed by the policy owner.[47]

Even if plaintiff failed to comply with the technical requirements of the policy to file a change of address, she would not be categorically barred from recovery. The statute requires that notice be sent to the "last known post office address" of the insured, not to the address listed on the policy. La. R.S. 22:905(A). In interpreting a similar insurance notice statute, the Louisiana Supreme Court held that the "last address as known to the insurer or as shown by the insurer's records" is not limited to the address shown in the policy. *See Skipper*, 116 So. 2d at 523-24. Nor is the insured always required to affirmatively inform the insurer of their change of address. *See Cuccia*, 263 So. 2d at 885-88 (reversing summary judgment to insurer on notice issue when the plaintiff set up mail forwarding with the post office, and the insurer's agent may have known of the plaintiff's change of address).

If an insurer's agent is aware of a change of address, this knowledge is binding on the insurer, and a notice "mailed to an address in the company's records is ineffectual." *Skipper*, 116 So. 2d at 523; *see also Red Stick Confectionaries, Inc. v. Commercial Union Ins. Co.*, 365 So. 2d 580, 581 (La.

---

[47] *Id.* The policy provides that the "owner may change the beneficiary or ownership by written notice." *Id.* But a change of address is not a change of beneficiary or ownership.

App. 1 Cir. 1978) (finding notice of cancellation ineffectual when agent listed incorrect address on policy). Similarly, if an insurer has information indicating that the address listed on the policy is incorrect, it must takes steps to send notice to the insured at their correct address. *See Breitenbach v. Green*, 186 So. 2d 712, 718 (La. App. 4 Cir. 1966) (holding that insurer had a duty to make a further effort to notify insured after notice of cancellation was returned undelivered). If plaintiff mailed a change of address notification to Old Line Life Insurance Company, the insurer was not free to ignore this information simply because it did not arrive in the precise form specified by the policy.

The Court finds a genuine issue of material fact as to whether plaintiff informed Old Line Life Insurance of the Beans' change of address. Plaintiff testified that she mailed a change of address card provided by the post office to Old Line Life Insurance in 2000 informing it of their new address.[48] She also set up mail forwarding with the postal service.[49] Adcock attests that defendant has no records indicating that it or Old Line Life Insurance ever received notice of a change of address for Mr. Bean's policy.[50] Defendant's corporate representative, Donna Jones, testified that that she did not know

---

[48] R. Doc. 63-3 at 11-14.
[49] *Id.* at 15.
[50] R. Doc. 50-2 at 3 ¶ 6.

Old Line Life Insurance's procedure for processing change of address requests before the 2003 merger.[51] Jones further testified that, after not receiving a response to an expiration notice, defendant's policy is to continue sending written notices to the same address.[52] Drawing all reasonable inferences in favor of plaintiff, a reasonable factfinder could conclude that plaintiff notified Old Line Life Insurance of the Beans' change of address, and that the insurer failed to properly record the change. Accordingly, defendant is not entitled summary judgment on the breach of contract claim.

### E. Statutory Interest

Defendant argues that plaintiff cannot recover statutory interest because she is not entitled benefits under the insurance policy.[53] Defendant presents no other arguments related to statutory interest. Because the Court denies summary judgment as to plaintiff's breach of contract claim, defendant has not shown that it is entitled summary judgment with regard to statutory interest.

---

[51] R. Doc. 63-8 at 19, 21-22.
[52] *Id.* at 28-29.
[53] R. Doc. 50-1 at 10.

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment is DENIED.

New Orleans, Louisiana, this __9th__ day of February, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE